## THE STATE OF MINNESOTA *vs.* WILLIAM D. ARMSTRONG.

The Statute (*page* 766, *Sec.* 7, *Stat. Minn.*) authorizing the Court to amend an Indictment upon demurrer, is intended to operate upon mere matters of form, but matters of substance which are necessary to perfect the charge against the Defendant, can only be inserted in the indictment by the Grand Jury.

Carnal and illicit intercourse between a married man and an unmarried woman, does not constitute the crime of adultery, but simply fornication, under the Statutes of the State.

The Statute (*page* 681, *Sec.* 53,) is intended simply to save those cases where, at Common Law, a wife could be a witness against her husband, or a husband against his wife, and does not introduce a new rule, or extend the old one. And a prosecution for the crime of adultery does not fall within the cases in which a wife may testify against her husband.

In criminal prosecutions for bigamy or adultery, where the offence depends upon the Defendant being a married man or woman, the marriage must be proven in fact, and a conviction cannot be had upon the admissions of the Defendant, that he or she is married.

This case was certified to the Court, by the Judge of the District Court of Hennepin County, as presenting questions of so important and doubtful a character as to require the decision of the Supreme Court.

The Indictment charged the Defendant with the crime of adultery with one R. K., an unmarried woman, &c., &c., " he, the said Defendant, then being a married man, and having a lawful wife alive," &c.

Points and authorities for the Prosecution :

*First.*—The facts set forth in the indictment constitute the crime of adultery. *Commonwealth vs. Call.* 21 *Pick. R.* 510 ; *Commonwealth vs. Reardon,* 6 *Cushing,* 78 ; *State vs. Hutchinson,* 36 *Maine,* 263.

*Second.*—The ruling of the court in allowing the prosecutrix, in this action, to testify without the consent of her husband, the Defendant, was correct.

1. Because it is a crime, committed by the husband against the wife. *Compiled Statutes, p.* 681, *Sec.* 53.

2. No indictment could be found by the Grand Jury except upon the complaint of the prosecutrix, and her testimony before them. *Compiled Statutes, p.* 728, *Sec.* 1.

3. And no evidence can be received before the Grand Jury except such as would be allowed on trial. *Compiled Statutes, p.* 752, *Sec.* 35, 36.

Points and authorities of Defendant :

In this case several questions arise :

*First.*—The facts set forth in the indictment and proven on the trial, do not constitute the crime of adultery within our Statute, and the court erred in instructing the jury that such facts constituted the crime of adultery. Our Statute does not define the crime of adultery, and we must look to the Common Law and contemporaneous construction of other States for such definition.

Noah Webster defines it as a " violation of the marriage bed ; a crime of civil injury, which introduces, or may introduce into the family a spurious offspring," and states that in Connecticut the sexual intercourse of any man with a married woman is the *crime* of adultery in both, but such intercourse of a married man with an unmarried woman is fornication in both, though it is adultery in the man within the law respecting divorce, but not a criminal adultery.

The same is the rule in New Hampshire.  *State vs. Wallace,* 9 *N. Hamp. Rep.* 515.  So also in Vermont.  *State vs. May,* 6 *Vermont Rep.* 311.  So in Indiana.  *State vs. Way,* 2 *Blackf.* 318.  And such is laid down as the general rule in *Archibald's Crim. Pl., with Waterman's Notes,* 3 *Vol.* 615 *Note,* where the subject is elaborately discussed.

In some of the States if either of the parties are unmarried, it is holden not to constitute adultery.  *Respublica vs. Roberts,* 2 *Dall. Rep.* 124.

But without the aid of contemporaneous adjudication it is clear, from the context of our Statute alone, that the sexual intercourse of a married man with an unmarried woman is not adultery.  For it provides specially that when the crime is committed between a married woman and a man who is unmarried, the man shall be deemed guilty of *adultery,* while it makes no provision that such intercourse between a married man and an unmarried woman shall be so considered.

On the contrary, such an offence is evidently made fornication by the 5th Section of the same Chapter, (*Chap.* 96, *Pub. Stat. p.* 729,) which provides : " If *any man* shall commit fornication with any *single woman,* each shall be punished," &c.

Placing the two sections together, the conclusion is irresistible that the illicit connection between a married man and a single woman is fornication—not adultery.  In its effects on families and society, it is no worse, and very much less injurious in its consequences than the corruption of a wife.  *See 3 Arch'd's Crim. Pl.* 615, *Note cited above, and cases there cited.*

*Second.*—The court erred in admitting the testimony of Louisa S. Armstrong, the wife of Defendant.

Our Statute provides that neither husband nor wife can be examined in any civil or criminal action for or against the other, *without consent* of that other—excepting civil actions or proceedings by one against the other, and criminal actions for a crime committed by one against the other.  *Pub. Stat. page* 681.

This Statute evidently makes but two changes in the Common Law rule :

1. Allowing the husband or wife to be examined by the

consent of the other, which was not before permitted. *See* 1 *Greenl. Ev. Sec.* 340.

2. Allowing them to testify in civil suits or proceedings by one against the other, where, without our Statute, they would be excluded on the ground of *interest in the event.*

But the court decided that adultery in the husband was a *crime against the wife* within the meaning of the Statute.

It is, however, clear that *that* clause was simply intended to preserve an old rule of evidence, which would otherwise be swept away by the general terms of the Section. It clearly relates to forcible injuries committed by one against the other, as assault and battery, malicious wounding; forcible abduction, rape, &c., and in all these cases at Common Law the party injured was a competent witness. 1 *Greenl. Ev. Sec.* 343, *et seq.; Starkie on Ev. Part* 4, *page* 713.

But in no case is adultery or *crim. con.* treated as a *crime* by one against the other. Indeed it is not a crime at all at Common Law—but in the nature of a trespass, damages being recoverable of the wrong doer.

Nor does the clause which forbids prosecution for the crime, except on complaint of the husband or wife, make either of them competent witnesses on the trial of such cause; because the making a complaint to the Grand Jury, does not imply any such right. The party states the offence, and names the witnesses to be summoned to be examined. Nor does the section purport to give them competency as witnesses. Statutes should not be tortured in derogation of Common Law.

*Third.*—The court erred further in allowing the testimony of Louisa S. Armstrong to prove the fact of the marriage; it was not the best evidence of that fact. Also in allowing any evidence of the ceremony without proving that Cummings was a Justice of the Peace. The evidence was only that he had acted as such in that one instance, which was not such a continual and notorious exercise of the functions of the office as to raise any presumption of his official character. 1 *Greenl. Ev. Sec.* 83 *and* 92.

*Fourth.*—The court also erred in allowing the Statutes of New York, revised in 1852, to be read to the jury as evidence of the law in 1845. No presumption arises that it was the

same; presumptions of that kind are not retrospective. Also in allowing the testimony of W. H. Peckham to show that the law was unaltered. The Statute of our State provides how the Statute law of other States may be proven ; it can be proven no other way. *Pub. Stat. Chap.* 84, *Sec.* 56, *page* 682.

In cases of adultery, bigamy, &c., it is essential that a valid marriage at the place where it is consummated be proven. *Morris vs. Miller*, 4 *Burrows*, 2056 ; *Birt vs. Barlow, Douglas*, 171 ; *State vs. Palmer*, 18 *Vermont ; People vs. Humphrey*, 7 *Johns.* 314.

The court, therefore, erred in admitting in evidence the entry in the Bible, and in charging the jury that they were to consider it as evidence, it being at most but an admission of Defendant. Also in charging the jury that by the laws of New York no ceremony was necessary, such not being the fact. *Rev. Stat. of New York of* 1830, *Title Marriage.* And further, that whether such was the law of New York or not, was a question of fact. *Woodbridge vs. Austin*, 2 *Tyler*, 367 ; *Packard vs. Hill*, 2 *Wend.* 411 ; *Chamoine vs. Fowler*, 3 *Wend.* 173 ; *Lincoln vs. Batelle*, 4 *Wend.* 475 ; *Mason vs. Wash, Breese* 16 ; *Haven vs. Foster*, 9 *Pick.* 112 ; *Stephenson vs. Bannister*, 3 *Bibb.* 112 ; *Ripple vs. Ripple*, 1 *Rawle*, 386 ; *Pack vs. Hibbard*, 26 *Vermont*, [698 ; *Munroe vs. Douglas*, 1 *Seldon*, 447.

By our Statute juries are exclusive judges of all matters of facts.

Ashley C. Morrill, Counsel for State.

Wm. Lochren, Counsel for Defendant.

*By the Court*—Flandrau, J. I will notice the objections briefly in the order in which they were made by the Counsel for the prisoner on the trial. Although the Statutes of this State confer upon the courts the somewhat extraordinary power of amending an indictment upon demurrer, yet it comes with the qualification that it is only in those cases in which " the Defendant will not be unjustly prejudiced thereby," that it can be properly exercised. *Compiled Statutes, page*

765, *Sec.* 7. By reference to the same Statutes on *page* 701, it will be found that the Defendant can only "be held to answer" for the offence of adultery "on the presentment or indictment of a Grand Jury." It is quite clear that the indictment, as it came from the Grand Jury, failed in a very essential particular in making any charge against the Defendant, that he could be tried upon, as it did not show that the crime was committed within the jurisdiction of the court. To supply an averment by amendment, which is necessary to perfect the charge, is in effect to "hold the Defendant to answer for a criminal offence" in a manner, other, than "on the indictment of a Grand Jury," and is, in a high degree, unjustly prejudicial to his rights as a citizen. Courts are bound to give effect to Statutes if possible, and this one, allowing an indictment to be amended, may be satisfied by permitting it to operate upon mere matters of form ; as for instance, the date, or place of the finding, or the court in which found, if omitted, might be supplied by amendment when actually within the knowledge of the court; but matters of substance can never be inserted in an indictment as the Statutes now stand, by any other tribunal than the Grand Jury.

After the indictment was amended by the court, it still failed in charging the Defendant with the crime of adultery. It appearing from the indictment that the woman with whom the Defendant had carnal and illicit intercourse, was at the time unmarried, the offence is simply fornication under our Statute.

There being no definition of the crime of adultery in the Statute, the language being simply: "Every person who shall commit the crime of adultery," recourse must be had to "well established definitions, sanctioned by books of authority, and adopted by long usage," to ascertain what constitutes the crime, whenever such question shall arise. I find in *Archibald's Crim. Pr. and Pl. Vol. 3, page* 615, *Waterman's Ed.,* an elaborate and learned exposition of the subject of adultery in a note by Waterman, which reviews the law applicable to the question, in England and many of the United States. Wherever the question has been examined in the numerous cases cited by Mr. Waterman, with few exceptions, the princi-

ple seems to be recognized by the courts that the gist of the crime, independently of statutory enactments, is the danger of introducing spurious heirs into a family, whereby a man may be charged with the maintenance of children not his own, and the legitimate offspring be robbed of their lawful inheritance. That an offence which may entail such consequences upon society, is much more aggravated in its nature, than the simple incontinence of a husband, few can doubt; although, in a moral point of view, the sin is equally heinous; and when regarded in a civil light, as a violation of the marriage contract, no distinction is made between an illicit connection by a married man with a married or an unmarried woman; in either case, for the purpose of a divorce, he is guilty of adultery.

In several of the States the carnal knowing of a single woman by a married man, subjects the latter to the crime of adultery, but it always arises from some feature in the Statutes of the State which bring such an act within the definition given of the crime.

Our Statute leaves it to be decided by what the law was before its passage, without throwing any light upon the subject, save what may be inferred from the provision contained in it, that "when the crime is committed between a married woman and a man who is unmarried, the man shall be deemed guilty of adultery." This special provision made to include an unmarried man, would seem to indicate that the Legislature were of the opinion that it required both parties to be married to constitute the crime of adultery, and that they only intended to change the rule in the particular case of connection between an unmarried man with a married woman. Such had been held to be the law in Pennsylvania, in *Resp. vs. Roberts,* 2 *Dallas Rep.* 124, before the Statutes of the Territory of Minnesota were passed, and, although the decision is not sustained by principle, and has been seriously questioned, yet I do not find that it has been overruled in that State.

That the Legislature did not intend to include the case of an illicit connection between a married man and an unmarried woman within the crime of adultery, further appears from the fifth section of the same act, which defines the offence of fornication to be the illicit connection of "*any man* with any

43

*single* woman," making both the man and the woman, in such case, guilty of fornication. This definition clearly includes the offence charged in the indictment in the case at bar, and makes it a much lower grade of offence than the one of which the Defendant was convicted. We feel bound to conclude that the Legislature, having made these special provisions, intended to exclude from the crime of adultery the case made out by the facts stated in this indictment.

The Statutes, *Comp. Stat. p.* 681, *Sec.* 53,) only allow the wife to testify against the husband, or the husband against the wife, without the consent of the one against whom the testimony is offered, in " a criminal action or proceeding for a crime committed by one against the other." This exception is inserted simply to save those cases where, at common law, a wife could be a witness against her husband, or a husband against his wife, and not to introduce any new rule, or extend the old one.

Mr. Greenleaf, in his work on *Evidence, Volume* 1, *Section* 343, says that these exceptions are allowed " partly for the protection of the wife in her life and liberty, and partly for the sake of public justice. But the necessity which calls for this exception for the wife's security, is described to mean ' not a general necessity, as where no other witness can be had, but a particular necessity as where, for instance, the wife would be exposed without remedy to personal injury.' " He instances the decided cases of a forcible abduction and marriage of the woman. The case of a rape upon her person, an assault and battery upon her, or for maliciously shooting her.

In *The People vs. Chegaray,* 18 *Wend.* 642, Justice Bronson doubts " whether the testimony of the wife should in any case be received against the husband, except where she complains of personal violence or ill treatment of herself." " She is competent in a prosecution against her husband for a personal outrage against herself." 3 *Phil. Ev. with notes by Cow. and Hill, p.* 76.

A prosecution for the crime of adultery does not fall within the cases in which a wife could testify against her husband under the general rule, for two reasons. *First.*—The necessity which warrants the exception does not exist, as all the mate-

State of Minnesota *v.* Armstrong.

rial features of such an offence are susceptible of proof without her aid as readily as in other crimes. *Second.*—It is not a crime against her person, and involves no violence to, or abuse of her.

As the purpose of the Statute was to save those exceptional cases which existed prior to its passage, which would otherwise have been swept away by the preceding part of the same section, and as adultery was not one of them, let us see whether it is brought within that class by operation of the Statute.

The act provides that " no prosecution for adultery shall be commenced except on the complaint of the husband or the wife." *Com. Stat.* 728, *Sec.* 1. It is contended that this provision authorizes them to be sworn as witnesses against each other before the Grand Jury in making the complaint. We think, however, that such was not the intention of the Legislature, because in the act in which they recognize and adopt the Common Law exceptions in favor of a wife or a husband testifying against each other, they manifest their intention of making no inroads into the marrigae relation, but of preserving it sacred as it previously existed. In speaking of it, they say, " There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate." We could not, in the face of this declaration, consistently with the rules of construction of Statutes, add another case to those in which the confidence of the marriage relation may be violated, while another reasonable interpretation will fully satisfy the Statute. We think in limiting the prosecution of the crime of adultery to cases in which the complaint shall be made by the husband or wife, the Legislature only meant to say, that it was a crime, which, if the parties immediately interested did not feel sufficiently injured by it, to institute proceedings against the offender, the public would not notice it. It does not follow that because the prosecution of a case proceeds upon the complaint of a particular person, that therefore, that person must be the complaining witness. The person who moves the prosecution before the magistrate, or Grand Jury, may not personally know any thing about the facts of the crime, but he can, nevertheless, put the investigation in motion, by entering a complaint, and either producing

the witnesses who can establish the facts, or putting the officers of the law in the way of doing so. It means that it must be upon the motion, and with the approbation of the interested party.

Marriages and deaths, in civil actions involving questions of inheritance, the legitimacy of heirs, &c., may often be proven by admissions of the parties, inscriptions upon tomb-stones, memoranda in family Bibles, and a variety of circum-stances which are admitted for convenience, and from neces-sity. But in criminal prosecutions for bigamy, or in adultery where the offence depends upon the Defendant being a mar-ried man or woman, the marriage must be proven in fact, and a conviction cannot be had upon the admissions of the Defend-ant. 7 *John.* 314, *People vs. Humphrey.*

The Statute laws of any of the States of the Union can only be proven by the production of printed copies thereof, pur-porting to be published under the authority of the government where they were passed, or upon proof that they are com-monly admitted and read in evidence in the courts of such State. *Comp. Stat.* 682, *Sec.* 56. Statutes passed in 1852 raise no presumption of what the law was in 1845. The pro-duction of the Statutes of another State may raise the pre-sumption that the law has continued to be the same as at the date of their passage, until an amendment or appeal is shown, but it cannot run retrospectively.

The conviction is set aside, and the indictment quashed.