THE STATE v. HOUSTON.

1. **Criminal Law**: EVIDENCE: HUSBAND AND WIFE.  Defendant's wife having testified against him before the grand jury which indicted him, it was *held* that objection could not be made thereto after conviction.

2. ——: ——.  Nor could the fact that witnesses were examined on the trial whose names were not upon the indictment, be taken advantage of by objection first raised after conviction.

*Appeal from Muscatine District Court.*

THURSDAY, APRIL 10.

THE defendant was indicted for the murder of his wife's father, one Henry Kelly, and was convicted of murder in the second degree, and sentenced to the penitentiary for twenty-five years.  He appeals.

The State v. Houston.

*Casey & Hobbs,* for appellant.

No appearance for the State.

ADAMS, J.—I.   Amelia M. Houston, wife of the defendant, was examined and testified before the grand jury.   It is insisted

**1. CRIMINAL law: evidence: husband and wife.** by the defendant that that fact rendered the indictment void, and that the verdict cannot be allowed to stand.   The wife cannot be a witness against her husband except in a criminal prosecution for a crime committed against her, and in a civil action brought by one against the other, but she may be a witness for him in all cases. Code, § 3641.   When the grand jury have reason to believe that evidence within its reach will explain away the charge it may order such evidence to be produced.   Code, § 4276.

A witness, then, called before the grand jury is not necessarily called against the defendant.   It might be the defendant's privilege that his wife should be called.   If, however, where a defendant's wife is called, and the facts of which she has knowledge are unfavorable to the husband, it would be proper for her to object to testifying, and we think she could not be compelled to testify against her objection.   If she testified, and her testimony was unfavorable to her husband, so that it appeared that the indictment was found in whole or in part upon her testimony, possibly the indictment might be quashed upon that ground.   But the defendant should judge whether her testimony was favorable or unfavorable before proceeding to trial, and move to quash if he thought there was ground for it.   We think it too late to raise an objection of this kind after conviction.

II.   Two witnesses were examined whose names were not on the indictment.   The admission of their testimony is

**2. ——: ——:** assigned as error.   No objection, however, was made to their testimony at the time, and such objection cannot be raised for the first time after conviction. *Ray v. The State,* 1 G. Greene, 316.

III.   The defendant asks that the sentence be reduced. The evidence shows that the defendant had become satisfied that his wife had contracted an improper intimacy with one Twigs; that he complained of her intimacy to her father, Henry Kelly; that her father told him that she was good enough for him if she ran with every man in Davenport, which was the place where the defendant and his wife were residing; that afterward the defendant's wife went to her father's house, at West Liberty; that the defendant followed; that he arrived at the house late in the evening and demanded admittance and admittance was refused; that he then requested to see his wife; that she declined to see him, on the ground that he had threatened her life, but told him that she would see him in the morning; that he then burst the door open and entered; that Kelly was in the room which was entered by the defendant, and upon the entry of the defendant ran into another room, probably for the purpose of escaping from the house, but being unable to escape that way returned, when the defendant struck him on the head; that Kelly then started for the door, and as he passed out the defendant shot him; that Kelly then went a few steps and fell upon the sidewalk; that while lying there the defendant shot him twice; that Kelly arose and fell again and died; that three bullet wounds were found in his body, either one of which was sufficient to produce death.

The evidence tends to show that the relations between the defendant and Kelly had been very unfriendly, and that on one occasion the defendant quarreled with him and knocked him down.   It tends to show that the defendant loved his wife, and was in a great state of excitement on account of the supposed intimacy, and had threatened to commit suicide.   We think, however, that there is little that can be said in extenuation of the killing of Kelly.   Defendant had previously threatened his life.   On the night of the murder he went to Kelly's house armed.   There is no pretense that he armed himself for self-protection.   We think his purposes were

wholly aggressive. Immediately upon his entrance he proceeded to murder Kelly, and without any immediate cause of provocation, so far as Kelly was concerned, except the mere fact that Kelly was harboring his own daughter, the defendant's wife, in his house, and did not open the door when the defendant demanded admittance. We do not feel justified in reducing the sentence.

AFFIRMED.