STATE OF IOWA, Appellee, v. ALVIN CHRISMORE, Appellant.

No. 43307.

JUNE 15, 1937.

REHEARING DENIED FEBRUARY 11, 1938.

Charles P. Howard, for appellant.

John H. Mitchell, Attorney General, Buell McCash, Spec. Asst. Attorney General, and Clarence A. Kading, County Attorney, for appellee.

SAGER, J.—The indictment charges that the offense of manslaughter was committed in the city of Knoxville by the operation on the part of the defendant, while in an intoxicated condition, of his automobile, in a grossly negligent and reckless manner and at an unlawful and dangerous rate of speed; that while so driving he struck one Sparks, inflicting injuries from which Sparks died.

At the close of the state's case defendant moved for a directed verdict on grounds that there was no competent testimony

to sustain the allegations in the indictment, that the state failed to make a prima-facie case, and that there was no sufficient testimony to support the indictment nor sufficient to take the case to the jury. This motion was renewed at the close of all the testimony. Both motions were overruled, as was the motion for a new trial which raised the same question and others concerning instructions given and instructions refused.

Because of the possibility of a new trial, made necessary by the error to which reference is hereafter made, we refrain from a discussion of the weight and sufficiency of the testimony.

Defendant also claims, and we think rightly so, that there was prejudicial error against him in the examination of the witness whose name appears in the record as Gladys Hendrix. She was called by counsel for the state. The defendant's counsel objected in this language:

"I don't understand how you can use a man's wife in a case of this kind. I object to the use of this witness at this time."

With the permission of the court defendant's counsel developed this:

"Q. Are you married, Mrs. Chrismore? A. Yes, I am.

"Q. Who is your husband? A. Alvin Chrismore.

"Q. The defendant in this case? A. Yes, he is."

The examination then proceeded under the questioning of counsel for the state:

"Q. Miss Hendrix, when were you married? (Objection overruled.)

"Mr. Clements: Answer the question. A. 15th of December.

"Q. 15th of December of what year? A. 1934.

"Q. Of this month, present month? A. Yes, sir.

"Q. And then I take it you were not married on the 20th of October, 1934? (Objection overruled.) A. No; I wasn't.

"Mr. Clements: You wasn't. Now, the 15th; you were married last Saturday, is that right? A. Yes, I was. (Objection overruled. Exception saved.)"

■ ■ ■ We are convinced that there was error here. When it became apparent that the witness was the wife of the defendant, the questioning should have proceeded no further. If there was any doubt about the truth of this testimony, investigation of the fact could have been made in the absence of the jury, thereby

avoiding the effect which would seem inevitably to follow this sort of examination. Its only effect, if not its purpose, could be to persuade the jury that the defendant married this woman for the sole purpose of suppressing her testimony. This may be conceded to have been the purpose of the marriage without altering our views with reference to the impropriety of admitting this sort of testimony. The statute (section 11260) expressly provides:

"Neither the husband nor the wife shall in any case be a witness against the other, * * *."

Then follows certain exceptions not applicable here.

When the fact was established that the witness was the wife of the defendant that should have been the end of it.

■■■ The question as it arises here has never been directly before this court, although in State v. Smith, 215 Iowa 374, 245 N. W. 309, while recognizing the binding force of this statute, we held that there was not prejudicial error in having permitted the wife to testify before the grand jury because the defendant, before proceeding to trial on the indictment, well knowing of his wife's appearance before the grand jury, made no objection to the indictment on that account.

While we do not attribute to the prosecution in this case the motives ascribed to the state's attorney in the case of Moore v. State of Texas, 45 Tex. Cr. R. 234, 75 S. W. 497, 498, 67 L. R. A. 499, 108 Am. St. Rep. 952, 2 Ann. Cas. 878, the following quotation aptly expresses our views upon the situation before us:

"The fact that appellant had married Susie Jones the day prior to his trial was also the subject of legitimate inquiry from proper sources. But here the statute expressly prohibits the use of the wife as a witness against her husband; and this though he had married her for the express purpose of suppressing her testimony against him. Miller v. State, 37 Tex. Crim. Rep. 575, 40 S. W. 313; United States v. White, 4 Utah 499, 11 Pac. 570. It makes no difference at what time the relation of husband and wife begins. The exclusion of their testimony under our statute, and to its fullest extent, operates wherever the interests of either are directly concerned (1 Greenl. Ev., secs. 334, 336), and this although he married the witness after she was placed under process (Pedley v. Wellesley, 3 Car. & P. 558; State v. Arm-

strong, 4 Minn. 335 [Gil. 251]). And the question of public policy is not an argument to the contrary. Public policy must be in accord with our statutory enactment. When the marriage ceremony is performed, no matter what the motive was or may be, the witness thenceforward becomes the lawful wife of defendant, and is prohibited under our statute from testifying against her husband, except where the offense is by the husband against her person. It will be observed in this case that the county attorney called the witness in behalf of the state, and asked her several questions in regard to the case, when, upon objection by appellant that she was his wife, the court then asked her the question if she was his wife, and, receiving an affirmative reply, excused her from the witness stand. This whole proceeding seems to have been a spectacular performance to force defendant to object to his wife testifying against him, in order to get the benefit of her testimony thus far in aid of the supposition and theory that appellant had married her to suppress her testimony. The point insisted upon by the state in regard to this whole matter of proving the recent marriage of appellant to Susie Jones was to convince the jury, first, that Susie Jones was the only eyewitness to the homicide for which appellant was being tried; second, that he had married her for the express purpose of suppressing her testimony; and, third, her evidence was of a damaging character to him. Any fact drawn from the wife proving, or tending to prove, that appellant had married her for the purpose of suppressing her testimony was directly against him. The county attorney had no right to call her as a witness against him. It is thoroughly demonstrated by the facts that appellant had married her; and, if the court and the county attorney were not satisfied with the statement of appellant that he had married the witness, it was a matter easily ascertained without calling the wife, and the good or bad faith of appellant in marrying her, and whether the court believed what the defendant testified in regard to it, would make no difference. The fact that she was the wife of defendant put the seal upon her lips, and excluded her being called as a witness against him. The fact that appellant had married the witness, and the further fact that it was done for the purpose of suppressing her testimony, were so intimately blended under the peculiar facts that they could not be separated; and the fact that he had married her was one of the main facts relied upon by the state to show

appellant's act in what the state contended was suppressing the testimony of the wife. It is well settled in cases of bigamy that the lawful wife cannot be called to prove her marriage with the accused, nor for the purpose of identifying him. Boyd v. State, 33 Tex. Crim. Rep. 470, 26 S. W. 1080, and authorities cited; Law of Evidence, by Burr W. Jones, Vol. 3, sec. 752, authorities collated in note 1. See, also, section 753, note 18. There is no question of the injurious effect of this action of the county attorney as sustained by the court, because it tended to uphold with fearful effect the contention of the state that by reason of his marriage with the witness the day before his purpose was to suppress her testimony, and that her evidence was of a seriously damaging effect against him. It was admitted upon the theory that it was a suppression of the testimony, and the wife was the most important witness in regard to the killing; and it would seem that the state placed the wife on the stand to get whatever of benefit there could arise from the objection urged by appellant that she was his wife in support of the theory of suppression of evidence."

See, also, People v. Trine, 164 Mich. 1, 129 N. W. 3, 6. This comment by the court is pertinent to the matter before us.

"The statute prohibits testimony by a wife against a husband without his consent. By calling defendant's wife, he was compelled to assert his nonconsent, which was thereby brought to the attention of the jury, who might naturally draw prejudicial inferences."

Lastly, defendant complains of instructions given and instructions refused. Some of the specifications of error are too indefinite to entitle them to consideration, but we have examined all of them carefully and have been unable to find error here; nor do we think the court erred in refusing those asked for. On the contrary, a reading of the instructions persuades us that the court gave to the defendant all and more than he was entitled to ask for. The impression left by the reading of these instructions is that the court made a very manifest effort to give the defendant a fair trial and, but for the error above pointed out, did so.

It follows that the case is reversed.—Reversed.

RICHARDS, C. J., and PARSONS, KINTZINGER, MITCHELL, STIGER, and HAMILTON, JJ., concur.