## STATE v. ROBERT OSCAR THURSTON.

216 N. W. 2d 267.

March 22, 1974—No. 43792.

*Joseph S. Friedberg,* for appellant.

*Warren Spannaus,* Attorney General, *Gary W. Flakne,* County Attorney, and *Theodore R. Rix, Michael McGlennen,* and *Vernon E. Bergstrom,* Assistant County Attorneys, for respondent.

ROGOSHESKE, JUSTICE.

Defendant, charged with two counts of first-degree murder, Minn. St. 609.185(1), in the shooting deaths of his estranged wife, Katherine Raskie, and her friend, Carole Mastro, was found guilty by a district court jury of two counts of second-degree murder, § 609.19, and, upon conviction, sentenced to two terms of not to exceed 40 years, to be served concurrently. The main issue raised on defendant's appeal is whether the trial court committed prejudicial error in refusing to admit the testimony of three witnesses, two of them key prosecution witnesses and the other an apparently disinterested defense witness, to the effect that the victims had made statements a short time prior to the shootings that they intended to kill defendant with a hand-

gun Mrs. Raskie had acquired. Defendant contends that this evidence was admissible to show intent to act on the part of the victims and to support his claim that the victims were the aggressors. The state contends that the trial court did not err in refusing to admit this evidence and that, even if it did, the error was not prejudicial. After careful consideration, we have concluded that the trial court committed prejudicial error in refusing to admit this evidence; accordingly, we reverse defendant's conviction and remand the case for a new trial.

The killings occurred on the evening of July 28, 1971, at the home of one of the victims, Katherine Raskie, who, as indicated, was defendant's estranged wife. Present at the house that night were defendant, Mrs. Raskie, Carole Mastro (the other victim), and several young children of the victims. Three of the children testified at trial, providing evidence in varying detail against defendant. Defendant, whose defense was that the women were the aggressors and that he killed the two in self-defense, attempted upon cross-examination of two of these witnesses, 9-year-old Brian Raskie and 10-year-old Donald Raskie, to elicit testimony that on a number of occasions their mother, in Carole Mastro's presence, had stated that she intended to shoot defendant and that she had obtained a handgun for that purpose. Again, as part of the presentation of his case in chief, defendant attempted to elicit testimony from a woman who babysat for Carole Mastro, and was an apparently disinterested witness, that the two women had stated that they intended to kill defendant with a handgun they had in their possession. On each attempt, the trial court sustained the prosecution's objection and defendant was forced to submit an offer of proof. It is the refusal to admit this evidence that defendant primarily urges as a basis for his request for reversal of the convictions and a new trial.

The state, in arguing that the trial court did not err in its refusal to admit this testimony, points to State v. Dumphey, 4 Minn. 340 (438) (1860), in which this court held, among other things, that the trial court in a murder prosecution involving a

claim of self-defense did not err in refusing to admit evidence that the victim had earlier threatened to kill the codefendant. This court based its holding on the fact that there was no showing that the threat had been made to the codefendant or communicated to him and also on the ground that the evidence was of doubtful materiality in defendant's trial.

The Dumphey decision has been criticized for its failure to distinguish between admissibility of evidence of "uncommunicated threats" to prove apprehension of danger on defendant's part and admissibility of such evidence to show the victim's state of mind. Note, 35 Minn. L. Rev. 315, 318. Most courts now hold such evidence admissible as "declarations of intention to attack the accused, received as hearsay statements to show the intention, and hence to ground the inference that the threatener carried out his purpose by committing the first act of aggression in the altercation with the accused." McCormick, Evidence, § 270, p. 573. A sensible qualification of the rule is that the defendant must introduce some additional evidence—and McCormick argues that the testimony of accused is sufficient—that the victim was the aggressor.

Although this court apparently has not ruled on the precise issue of the admissibility of such evidence to show intention of the victim, it would seem that the rule recommended by McCormick follows logically from some of this court's other decisions. One such decision is State v. Graham, 292 Minn. 308, 313, 195 N. W. 2d 442, 445 (1972), in which we alluded to the long-standing rule in Minnesota that in homicide cases the defendant claiming self-defense may offer evidence of the deceased's bad character and reputation for violence "to prove that deceased was the aggressor and precipitated the confrontation." In an earlier case recognizing this rule, State v. Keaton, 258 Minn. 359, 367, 104 N. W. 2d 650, 656 (1960), this court stated that when evidence of the victim's bad reputation is offered for the above purpose, "it is not necessary that the victim's reputation be known to the defendant."

The recommended rule also follows logically from this court's decision in other cases in which it approved the admission of evidence of declarations of intention to show subsequent conduct. See, e.g., Scott v. Prudential Ins. Co. 203 Minn. 547, 282 N. W. 467 (1938); State v. Kraus, 175 Minn. 174, 220 N. W. 547 (1928); State v. Hayward, 62 Minn. 474, 65 N. W. 63 (1895).

Because we believe that the rule recommended by McCormick is the correct rule and because we believe that this rule follows logically from our other decisions, we hold that the trial court erred in refusing to permit defendant to elicit testimony concerning the uncommunicated threats. Further, because we conclude that the refusal prejudiced defendant, we grant defendant's request for a new trial. We reach this conclusion only after a careful, thorough reading of the transcript of the trial, which convinces us that, although the excluded evidence might not have prompted the jury to acquit defendant outright, it might well have prompted the jury to convict of a lesser offense.

Although it is not essential to our decision, we believe that in the interest of avoiding any error on retrial we should also point out that our reading of the transcript indicates that the trial court may have been too restrictive in a number of its other rulings involving the admissibility of evidence.

First, the trial court in our view was too restrictive in limiting defendant's testimony about his prior relationship with Katherine Raskie. While we believe that a trial court may properly exclude evidence of prior relations between an accused murderer and his victim where the materiality of the relationship is not apparent, we also believe that a trial court in such situations should, in the interest of fairness to the accused, not be restrictive in determining materiality.

Second, we believe the trial court erred in sustaining the prosecution's objection to certain questions designed to elicit testimony from defendant concerning conversations he had with Katherine Raskie on the day of the killings. The purpose of this testimony was to show that it was her idea that he come to the

house that night and to support his claim that she, not he, had premeditated committing murder that night. McCormick, Evidence, § 228. Similarly, the trial court should have permitted defendant to testify that, when he arrived at the house, Katherine Raskie invited him to come with her into the bedroom, which is where the fight with her, out of the presence of the others, first erupted.

Finally, we believe that it would have been better if the trial court in instructing the jury as to lesser offenses had made some minimal attempt to explain the elements of the lesser offenses rather than simply read the statutes. Also, in this regard, the trial court ought to have indicated in the form of the verdicts submitted that the lesser degrees submitted were in fact lesser offenses than the charged offenses.

Reversed and remanded for a new trial.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.

MR. JUSTICE SCOTT took no part in the consideration or decision of this case.