STATE of Minnesota, Respondent,

v.

Jerry Allan JOHNSEN, Appellant.

No. C2–84–1434.

Court of Appeals of Minnesota.

March 19, 1985.

Review Denied May 20, 1985.

marital sex life. We reverse and remand for a new trial.

## FACTS

The State's evidence showed that Milton Thielke, aged 63, worked as the supervisor of Johnsen's estranged wife. After Thielke's wife died in March 1983, Thielke and Johnsen's wife developed a relationship.

Johnsen, age 33, had moved in with his mother sometime that summer and kept in daily contact with his wife and son by driving them to work and school each day. He visited Thielke twice at Thielke's home in Richfield, Minnesota about two weeks before Thielke's death. Although Johnsen claimed the visits were friendly and social and that he never raised any suspicions he had about his wife and Thielke, Thielke's children testified to the contrary. They testified that Thielke told them that he was afraid of Johnsen.

On September 9, 1983, about 6:00 a.m., Johnsen went to Thielke's home. He claimed that he went there to pick up Thielke to drive him and Johnsen's wife· to work and to talk over the situation. Johnsen killed Thielke in the yard by repeatedly striking him with a pipe and possibly another weapon with a sharp edge, although this was not positively established and was denied by Johnsen. Johnsen threw the pipe toward the back of the house. He then put Thielke's body in the trunk of his car and drove to Thielke's place of employment at 520 North Washington in downtown Minneapolis, where he put the body in the back of the building near the loading dock. He then picked up his wife and son and dropped them off at work and school and then went home and began washing the rear and trunk of his car.

Police investigators were approached by Johnsen at 520 North Washington about 9:30 that morning and Johnsen said that he knew nothing about what was going on. Police noted that he was shaking, perspiring, extremely tired, and looked very nervous. Investigators later went to his wife's apartment in Brooklyn Center. There they

Hubert H. Humphrey, III, Atty. Gen., Thomas J. Johnson, Hennepin County Atty., J. Michael Richardson, Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Heidi H. Crissey, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Appellant Jerry Johnsen was convicted by a jury of murder in the second degree, Minn.Stat. § 609.19(1) (1982), for killing his estranged wife's lover. Johnsen admitted at trial that he was responsible for the death of the victim, but claimed that it was done in the heat of passion and that he was therefore only guilty of first degree manslaughter. Minn.Stat. § 609.20 (1982). On appeal, he raises a number of issues, the principal one being the trial court erred in refusing to permit him to testify about his

found his car in the parking lot and noticed the rear trunk and bumper appeared to have been freshly washed. They also noticed blood on the door handle. They subsequently arrested him.

Johnsen was indicted for first degree murder and the jury was instructed on first degree murder, second degree murder, and first degree manslaughter. At trial, he was prevented from testifying about his deteriorating marital sex life. Defense counsel's offer of proof was as follows:

> Your Honor, he will testify that after the birth of their son the sexual contact between he—sexual intercourse between he and his wife were like four or five times during the rest of their marriage. That there was no communication. That they had disagreements, what type of birth control devices to use. That there was that kind of sexual frustration present and we believe it's relevant to the state of mind of lack of intent and to the provocation.

> \*    \*    \*    \*    \*    \*

> The thrust of our defense here is that this other gentleman was carrying on an affair with our client's wife, and that the deterioration of his marriage is relevant in regard to the feelings that he had upon discovering this affair that he had, that Mr. Thielke was having with his wife. It explained how it was possible for him to be in the heat of passion. This is just the subject to be connected up to what happened on September 9, this is vital background information. It's extremely relevant to his state of mind on the date of the murder; that in 1983, the same year that this sexual relationship began between Mrs. Johnsen and Mr. Thielke, at the time when our client was unemployed and when he himself did not have a sexual relationship with his wife, this is extremely relevant to his state of mind.

Following his conviction for second degree murder, Johnsen was sentenced to the presumptive executed prison term of 120 months.

## ISSUE

Did the trial court commit reversible error in ruling that appellant's offered testimony on his marital sex life was irrelevant?

## ANALYSIS

At trial Johnsen attempted to testify about his marital sex life and his sexual frustration. This was offered to provide background information on his emotional status at the time of the killing. Johnsen did testify that when he confronted Thielke on September 9, Thielke blurted out, "You might as well know I'm screwing your lousy wife." The trial court ruled that the offered evidence of Johnsen's marital sex life was not relevant to the issues at trial because the issues at trial were the relationship of Johnsen and Thielke and whether he had provocation to kill Thielke.

Johnsen was convicted of second degree murder under Minn.Stat. § 609.19:

> Whoever does \* \* \* the following is guilty of murder in the second degree \* \* \*

> (1) Causes the death of a human being with intent to effect the death of that person or another, but without premeditation \* \* \*.

First degree manslaughter is committed when one "intentionally causes the death of another person in the heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances \* \* \*," Minn.Stat. § 609.20(1).

■ Homicide may be reduced to manslaughter if committed in the heat of passion on being informed of a spouse's adultery if the jury could find the circumstances were such as reasonably to cause heat of passion. *See, e.g., Vick v. State,* 116 Ga.App. 25, 156 S.E.2d 125 (1967); *Davis v. State,* 161 Tenn. 23, 28 S.W.2d 993 (1930).

■ Of primary importance in separating murder from first degree manslaughter is the defendant's emotional state. *State v. Boyce,* 284 Minn. 242, 255, 170 N.W.2d

104, 112 (1969). As the Minnesota Supreme Court said in *Boyce:*

> Whether a person who kills is guilty of first-degree manslaughter or murder depends primarily upon the state of his emotions. If he was in the "heat of passion," this would cloud his reason and weaken his willpower and therefore, in the eyes of the law, reduce the criminal culpability of the death-producing act.

The Wisconsin Supreme Court has noted:

> The state of mind of the defendant at the time of the shooting is crucial because it bears upon an inference as to his total character and this in turn points to the different degrees of homicide of which he may have been guilty.

*State v. Hoyt,* 21 Wis.2d 284, 124 N.W.2d 47, 61 (1963).

■ Further, evidence pertaining to the relationship between a defendant and the homicide victim is ordinarily admissible in criminal prosecutions, as it bears on the defendant's intent. *State v. Diamond,* 308 Minn. 444, 449, 241 N.W.2d 95, 99 (1976). Evidence of defendant's conduct toward a third party related to or close to the victim is also generally admissible to show a strained relationship between the defendant and the victim and to establish defendant's intent. *State v. Blanchard,* 315 N.W.2d 427, 431 (Minn.1982).

The Minnesota Supreme Court has cautioned against restrictive rulings limiting defendant's testimony bearing on his state of mind. *See State v. Thurston,* 299 Minn. 30, 34, 216 N.W.2d 267, 269–70 (1974). Thus, in the case of *State v. Leinweber,* 303 Minn. 414, 228 N.W.2d 120 (1975), a prosecution for second degree murder of the defendant's wife, the testimony as to the relationship between the defendant and his wife and whether their marriage was relatively peaceful or increasingly tumultuous was lengthy. *Id.* at 416, 228 N.W.2d at 122. Evidence was also introduced showing that the marriage was under increasing emotional strain, resulting in anger and frustration on the part of both the deceased and the defendant. *Id.* at 418, 288 N.W.2d at 123.

In a case involving prosecution for burglary, we criticized the exclusion of testimony on the sexual relationship between defendant and the victim because it bore on defendant's intent in entering the victim's house. *See State v. Roberts,* 350 N.W.2d 448, 451–452 (Minn.Ct.App.1984).

■ Moreover, criminal defendants have a due process right to explain their conduct to a jury. *State v. Brechon,* 352 N.W.2d 745, 750 (Minn.1984). Here, the trial court's ruling that Johnsen's offered testimony was not relevant was unnecessarily restrictive. Johnsen's offered testimony about his sexual frustration and poor marital sex life cannot be said to be totally irrelevant. It would have had some probative value as to his emotional condition at the time he confronted Thielke on September 9. Minn.R.Evid. 401. Arguably, it may have shed light on his conduct and bolstered his theory that he went crazy after Thielke told him that he was "screwing" appellant's wife.

Where defendant is accused of murdering his spouse's lover, it makes little sense to say the only issue relevant is the relationship between the defendant and the lover. The defendant is entitled to present the whole picture to the jury. The exclusion of the evidence was prejudicial to the defendant and may have prompted the jury to convict defendant of a greater offense. *See Thurston,* at 34–35, 216 N.W.2d at 270.

**DECISION**

■ In a homicide prosecution where the dispute centers on the defendant's emotional state at the time of the killing, the trial court committed reversible error in preventing defendant from testifying about his marital sex life where such testimony was relevant to defendant's emotional state. In light of our decision, we need not decide the other issues raised by appellant.

Reversed and remanded for new trial.