**STATE of Iowa, Appellee**

v.

**David Lyle FRYER, Appellant.**

**No. 57308.**

Supreme Court of Iowa.

Feb. 19, 1975.

James C. Ladegaard, Spirit Lake, for appellant.

Richard C. Turner, Atty. Gen., Joseph Beck, Asst. Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., and David Casjens, County Atty., for appellee.

Heard before MOORE, C. J., and LeGRAND, REES, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

Defendant entered a guilty plea to an open charge of murder. He appeals the trial court's determination he was guilty of first degree murder. We affirm.

The case arises from a dreadful tragedy which occurred November 17, 1973 at Git-

chie Manitou State Park. The facts are as incredible as they are pathetic. Four boys, Dana Baade, Stewart Baade, Michael Hadrath and Roger Essem were all shot to death in the park where they had gone on a social outing which included use of marijuana. The group also included 13 year old Sandra K. Cheskey. Miss Cheskey survived.

Three brothers were implicated in the murders: David Lyle Fryer (defendant), Allen Fryer and James Fryer. Defendant related the three were deer hunting on the night in question. When they came to a point where they observed the five youths, the brothers for some inexplicable reason pretended to be narcotics officers. They persisted in this pretense in all communications with their victims. It is unknown how far the pretense was continued in the communications among the three Fryer brothers. It is likewise unknown how long the murder victims continued to believe the Fryer brothers were narcotics officers.

The motive for the murders is confused and obscure. The Fryer brothers acted in such a way as to indicate their twisted notions of a narcotic raid called for them as pretended officers to indiscriminately shoot marijuana users.

Some time after the five youths gathered at the park they heard noises in the woods which they initially believed were made by wild animals. Miss Cheskey testified two shots were fired by Allen and David Fryer from a rocky ledge which closely overlooked the campfire. The shots felled Roger Essem and Stewart Baade. Miss Cheskey and Michael Hadrath hid behind a tree as the first shot was fired. Miss Cheskey believed David Fryer fired the first shot because she saw him bring his gun down just after it was fired. However she conceded it was possible either Allen or James Fryer could have fired it.

Allen Fryer then ordered the two to come out from behind the tree. As they emerged Michael Hadrath asked, "Who the hell do you think you are?" Allen Fryer replied by shooting him in the arm.

The Fryers identified themselves as narcotics officers and marched the youths up a trail to their pickup truck. Roger Essem was not included because he was apparently killed instantly. Miss Cheskey testified Allen Fryer drove her away in the pickup. As they were leaving she saw Dana Baade, Stewart Baade, and Michael Hadrath walking on the side of the road. James Fryer and the defendant walked behind them with guns.

A statement made by defendant November 30, 1973 to the police department in Sioux Falls, South Dakota was admitted at the hearing. It describes what happened after Miss Cheskey left and includes the following:

"Jim (his brother James Fryer) started the van. I got in the other side and he turned—backed up, turned it to the west which faced the boys and he stepped out and he shot Dana Baade first and then Stewart Baade and I shot Stewart Baade in the back once. I think he was already dead beause Jim was shooting Double O buck and then he shot this Hadrath. He walked up and just kept shooting."

After leaving the park Miss Cheskey was driven around by Allen Fryer. They stopped for gas and were later rejoined by the other two Fryer brothers. They stopped at an abandoned farmhouse for a few hours. Finally Allen Fryer, still posing as a narcotics officer, took her home because he told her she "was too young to get busted."

After pleading guilty to the murder of Stewart Baade a hearing was held pursuant to § 690.4, The Code, to determine defendant's degree of guilt.

By his plea of guilty, defendant conceded he killed Stewart Baade with malice aforethought. § 690.1, The Code. In determining defendant was guilty of first degree murder the trial court found the killing was "willful, deliberate and premeditated." See § 690.2, The Code. The finding the killing

was willful, deliberate and premeditated is the underlying issue in the trial and appeal. It was challenged following the degree of guilt hearing by way of a motion for a new trial on four grounds. Only two were preserved for appeal.

I. Miss Cheskey testified at the hearing. Following her direct examination defendant moved the State be required to turn over for defendant's examination "the statements that she had made and given to the prosecution." One such statement by Miss Cheskey was produced. It now appears the statement produced was in part developed from earlier statements. These included one in Miss Cheskey's own handwriting and one by way of a transcription from original shorthand notes in question and answer form. Both earlier statements were the subject of handwritten corrections by Miss Cheskey. After the statement was produced the trial court inquired as to whether there were any others. The prosecutor replied: "There are others which are incorporated in this one, Your Honor."

The trial court may have understood this response to suggest such other statements were appended to the one produced. Following submission of this appeal, however, it appeared the prosecutor intended only to suggest by his response that such other statements were reiterated in the one produced. Defendant's first assignment on appeal is the failure of the trial court to hold upon his request the in camera hearing required by State v. Mayhew, 170 N.W.2d 608, 614 (Iowa 1969) and State v. Deanda, 218 N.W.2d 649, 650–652 (Iowa 1974).

Following the submission of this appeal and pursuant to rule 342(e), Rules of Civil Procedure, applicable in criminal appeals by reason of § 793.17, The Code, we remanded this case for the limited purpose of conducting such an in camera hearing.

The in camera hearing was held by the trial court December 30, 1974. At the in camera hearing the statement of Miss Cheskey was again produced and offered in evidence as exhibit A. Exhibit A was the same statement which had been produced at the degree of guilt hearing. Other exhibits were also produced and offered into evidence, as follows:

(1) Exhibit B consisted of two pages of Miss Cheskey's own handwritten corrections made following her perusal of exhibit A.

(2) Exhibit C is a 21 page, unsworn, unsigned, typewritten statement by Miss Cheskey in question and answer form. It was taken by a shorthand reporter November 17, 1973 at the Sioux Falls, South Dakota police department. This was the statement referred to by the prosecutor at the degree of guilt hearing as being "incorporated" in exhibit A.

(3) Exhibit D is a video tape taken of an interview of Miss Cheskey at the scene of the crime. It was taken within three days following the murders. Words on the tape are incomprehensible. Exhibit D has no value.

(4) Exhibit E is a two page, handwritten statement of unknown date. It appears to be in the handwriting of Miss Cheskey and appears to follow exhibit F in chronological order.

(5) Exhibit F is another handwritten statement of Miss Cheskey. Exhibits E and F appear to have been written before exhibit A.

It is apparent the prosecutor was right in believing Miss Cheskey's earlier statements were "incorporated" into exhibit A. Exhibit A appears to have been developed in part by the preparation of the earlier statements. Apparently Miss Cheskey was not able at first to recall and relate in chronological order the events as she finally did in exhibit A. The other exhibits seem to have been prepared and gathered in the course of routine investigation so that a complete and orderly statement might be made. There is nothing unusual or wrong in such a procedure.

The wrong occurred at trial when the earlier exhibits were not produced. State v. Mayhew, supra.

It happens in this case the defendant was in no way affected by the failure of production. All Miss Cheskey's statements, even one the prosecutor had not seen at the time of the degree of guilt hearing, were consistent. Exhibit A, the statement furnished to defendant, did in fact accurately include all others. Exhibit A, in common with the other earlier ones, was in some minor respects inconsistent with Miss Cheskey's testimony at trial. But this does not require a reversal and a rehearing of defendant's degree of guilt under State v. Mayhew, supra. It does not because all statements were consistent with one another and the one furnished was complete.

Although defendant's counsel argues otherwise we believe it was shown he was deprived of nothing. The earlier statements could in no way have aided in the cross-examination of Miss Cheskey. Anything which could be suggested as inconsistent with her testimony was identically inconsistent in exhibit A, the statement furnished. The rule requiring production of statements was given in the interests of a fair trial, not merely to burden the prosecution.

We hold the in camera hearing has cured any error which resulted from the State's failure to produce all Miss Cheskey's statements germane to her testimony. We however do not wish to be understood as implying any retreat from our rule such statements must be produced. Our recent holdings on the question were well summarized as follows:

"Surprise and guile should be removed from a criminal trial just as they have been from civil trials. The state cannot suppress requested statements or evidence which are 'materially exculpatory.' The test is what would logically aid the defense in the investigation and preparation of its case and as evidence upon trial. The prosecutor's view as to what is material, or the truth or falsity of such evidence, is not controlling. The prosecutor is not to prepare the defendant's case, but it is his duty to see that a fair trial is had and, to this end, he cannot suppress important evidence. If any question exists concerning such production, it should be submitted to the court for an 'in camera' decision. All-inclusive demands for statements, reports, and summaries of witness testimony are not proper. The trial court does have discretion in this matter. During trial, statements of witnesses or police officers should be supplied in accordance with the procedures of the Federal Jencks Act. Prosecutors have been urged by the court to seriously consider if production of requested matter will cause any actual harm and, if not, to produce the same in order to avoid appeals." (Citations omitted). Gaudineer, Ethics: The Zealous Advocate, 24 Drake L.Rev. 79, 93. See also ABA Standards for Criminal Justice, Discovery and Procedure Before Trial, § 2.1.

Defendant's first assignment is without merit.

II. Defendant's other assignment is his claim the trial court erred in finding he acted with premeditation and deliberation. Where circumstantial evidence is relied upon to support a finding of guilty it is not enough for such evidence to be consistent with defendant's guilt. Circumstantial evidence must also be wholly inconsistent with any rational hypothesis of defendant's innocence and so convincing as to exclude reasonable doubt defendant was guilty of the offense charged. State v. Sellers, 215 N.W.2d 231, 232 (Iowa 1974).

Defendant's argument on this assignment is grounded on a claimed shortness in the passage of time. The argument necessarily (not to say properly) begins at a fixed point in time. Miss Cheskey left the park with Allen Fryer while Stewart Baade was still alive. Defendant points out she neither participated in nor overheard any conversation dealing with the Fryers' intentions as to their victims. Defendant believes it follows we must therefore accept defendant's description of his intentions or absence of them at that time. He bases his relief on

the fact defendant's statement showing his participation in the shooting of Stewart Baade was admitted into evidence and was the only evidence (aside from his guilty plea) of his murder of Stewart Baade.

Defendant's statement has been previously quoted. He now argues it discloses, and that we are bound to believe, he was in the act of leaving the park with Baade still alive. At this point his brother, James Fryer, stopped the vehicle and began the shooting which defendant suddenly found himself joining in. He argues he did not have time to formulate premeditation and deliberation between the time he was leaving the park and his participation in the shooting. The argument is completely unsound.

In the first place the trial court, sitting as trier of facts, was not bound to accept all of defendant's statement because it accepted part of it. The trial court may well have accepted the admission of shooting and rejected any claim defendant had intended to leave the park without more shooting.

To deliberate is to weigh in one's mind or to consider. To premeditate is to think or ponder upon a matter before action. Webster's International Dictionary. Premeditation and deliberation may not be presumed. It may not be inferred from intent. State v. Christie, 243 Iowa 1199, 53 N.W.2d 887, 54 N.W.2d 927 and citations. However premeditation and deliberation need not exist for any particular length of time. State v. Gilroy, 199 N.W.2d 63, 66 (Iowa 1972). In finding premeditation and deliberation the trier of facts may consider the fact a defendant has selected a deadly weapon, such as the gun involved here, with an opportunity to deliberate where he thereafter uses it in a deadly manner. State v. Christie, supra.

Defendant suggests the false posing as narcotics officers by the Fryer brothers is evidence they did not deliberate. He argues, if murder had been intended, there was no reason for the brothers to tell the victims they were narcotics officers. He

states: " * * * Instead, the obvious for misleading the victims was to convince them not to tell anyone of these events and to cast suspicion in the wrong direction if the events were reported. Also no motive was ever established by the State."

We do not agree "the obvious reason for misleading the victims" was to keep them silent. Such an argument presupposes the pretense was conceived after the murders began and before they were completed. There is no basis in the record for such a supposition. It is more logical to believe the pretense, because it arose at least as soon as early in the encounter, is consistent with defendant's premeditation and deliberation of Stewart Baade's murder. By posing as narcotics officers the Fryer brothers rendered their victims more submissive, if any advantage beyond firearms was needed. The youths were thereby less likely to resort to their only possible defense. They were less likely to run.

Finally defendant points out no motive was ever established by the State. He somehow thinks the senselessness of the murders should in some way detract from a showing of premeditation and deliberation. Murder is always senseless. It is absurd to suggest a motive is required in order to show premeditation and deliberation.

Affirmed.