STATE of Iowa, Appellee,

v.

James HENDERSON, Appellant.

No. 60337.

Supreme Court of Iowa.

June 28, 1978.

Allen, Babich & Bennett, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., J. Susan Carney, Asst. Atty. Gen. and David H. Correll, Black Hawk County Atty., for appellee.

Considered by MOORE, C. J., and MASON *, REES, UHLENHOPP and REYNOLDSON, JJ.

UHLENHOPP, Justice.

This appeal involves a number of problems which arose in a prosecution on a murder charge.

The deceased, Robert Streeter, and one Dennis Mikkelson spent the late afternoon and the evening of September 4, 1976, visiting bars and drinking. At about 2:00 o'clock the next morning they drove toward a restaurant on University Avenue in Cedar Falls, Iowa.

During the same period of time, defendant James Henderson together with Alfred Hurt and Merci Henderson were drinking at various places, and at about 2:00 a. m. drove on University Avenue toward a place to eat.

* Serving after June 14, 1978, by special assignment.

The two vehicles came alongside each other at a stop light and the occupants of the respective vehicles exchanged opprobrious epithets. The vehicles went on and soon decedent's vehicle turned into an access road and stopped. The other car followed and stopped nearby.

Decedent and Mikkelson alighted from their vehicle and two individuals got out of the other vehicle, one of whom was defendant. The jury could find that defendant then pulled a gun, shot once, and killed decedent. The parties at the subsequent homicide trial had a spirited contest as to whether defendant shot at decedent or whether the gun discharged and the bullet ricocheted off some object and then struck decedent.

The county attorney filed an information charging defendant with murder. The pretrial preparation and the trial presentation were unusually thorough on both sides. The jury found defendant guilty of first-degree murder, and the trial court sentenced him accordingly. He appealed.

In this court defendant advances several propositions which we consider in chronological order.

I. *Demand for Preliminary Examination and Release.* A preliminary information was filed against defendant, and on September 16, 1976, a warrant issued for defendant's arrest. Defendant was accordingly arrested. The next day the county attorney presented his information charging defendant with murder, a district judge approved it, and the county attorney filed it. On September 22, 1976, defendant filed a demand for preliminary examination and release from custody, which the trial court subsequently denied. Defendant unsuccessfully sought an original writ of certiorari in this court.

Much pretrial discovery and activity thereafter occurred in the case, followed by the trial itself and ultimately the jury verdict. Defendant now contends that the verdict and judgment thereon should now be set aside and a new trial granted because of the pretrial order denying the demand.

The United States Supreme Court decided these issues adversely to defendant's contention in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54. We applied the Court's views in *State v. Lass,* 228 N.W.2d 758 (Iowa). See also *State v. Fitz,* 265 N.W.2d 896 (Iowa), and *State v. Grady,* 231 N.W.2d 869 (Iowa).

In substance, two functions are involved. One is *charging* a defendant and the other is *incarcerating* him. A preliminary examination is not necessary in order to charge a defendant; our county attorney information system satisfies *Gerstein,* and the information procedure also renders a preliminary examination unnecessary. *State v. Collins,* 260 Iowa 1366, 152 N.W.2d 612.

Under *Gerstein* a judicial determination is necessary, however, for pretrial detention of a defendant. We need not decide today whether the required approval of a county attorney's information by a district judge is sufficient to satisfy *Gerstein.* See Code 1975, § 769.8. Another rule intervenes. The Court stated in *Gerstein* and we held in *Grady* that failure to have a judicial pretrial detention determination does not void a subsequent conviction on the merits. *Gerstein v. Pugh,* supra, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54, 68 ("Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction."). Defendant's course, if he believed the denial of his demand was wrong as to detention, was to obtain a writ of habeas corpus, and if that proved unsuccessful in the district court, to have that habeas corpus decision reviewed by us as of right— rather than to assert subsequently that the conviction after full trial should be set aside.

Defendant asks us to overrule *Lass* and *Grady,* but after reexamination of those decisions in the light of *Gerstein,* we adhere to them. We do not find merit in defendant's first proposition.

II. *Wife as a "Witness".* The jury could find that on July 10, 1976, when one Peggy

Jo Lee (Lee) was living with defendant, she bought a .32 calibre S & W long revolver from Winder Sport Shop, together with ammunition for it; that the bullet which killed decedent came from such a gun; and that an empty box for such a gun was found at the place where defendant lived at 215 Center Street, Waterloo, Iowa. On September 8, 1976, Lee married defendant.

Prior to trial defendant made a motion in limine. He asked (a) that Dale R. Winder, the manager of Winder Sport Shop, not be allowed to testify about the purchase of the revolver by Lee or about her signature on Winder's federal firearms transaction record; that Delight Te Paske not be allowed to testify as to Lee's handwriting on court services reports in 1973; and that Duane Barton, a handwriting analyst, not be allowed to testify that handwriting examplars of Lee and of Peggy Jo Lee Henderson are the same as the handwriting on Winder's federal firearms transaction record. The basis of defendant's motion was that this testimony would violate § 622.7 of the Code which provides, "Neither the husband nor wife shall in any case be a witness against the other . . . ." After hearing on the motion, the trial court overruled it. Defendant preserved the claimed error in later proceedings and argues before us that the trial court was wrong.

■■ We do not have difficulty with the first two parts of defendant's motion, relating to the testimony of Winder and Te Paske. True, those witnesses would testify about conduct of Lee in buying the gun, signing the firearms transaction record, and writing the court services reports. But Lee was not a "witness" with respect to those things. Evidence of conduct by a spouse is not inadmissible where it is proved by means other than the testimony of that spouse. *United States v. Mackiewicz*, 401 F.2d 219 (2 Cir.), cert. den. 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258; *Hilliard v. United States*, 121 F.2d 992 (4 Cir.), cert. den. 314 U.S. 627, 62 S.Ct. 111, 86 L.Ed. 503; *United States v. Winfree*, 170 F.Supp. 659 (E.D.Pa.); see also VIII Wigmore, Evidence, § 2232 at 229–230 (McNaughten Rev.).

The third part of the motion is harder. That conduct of Lee involves additional facts.

The prosecutor desired to have Lee sign her name so that the expert Barton could compare the signature with the signature in Winder's firearms record. He also desired to photograph Lee so that he could show the picture to Winder for identification purposes. He therefore proceeded under § 769.19 of the Code of 1975, which provides:

The clerk of the district court, on application of the county attorney, shall issue subpoenas for such witnesses as the county attorney may require, and in such subpoenas shall direct the appearance of said witnesses before the county attorney at a specified time and place; provided that no subpoena shall issue unless an order authorizing same shall have been first made by the court or a judge thereof. After preliminary information, indictment, or information the defendant shall be present and have the opportunity to cross-examine any witnesses whose appearance before the county attorney is required by this section.

At the time the prosecutor so proceeded, Lee was defendant's wife.

Defendant objected the procedure would violate previously-quoted § 622.7:

Neither the husband nor wife shall in any case be a witness against the other, except [in four situations not involved here].

The parties each presented one principal authority on the question, and the trial court adopted the State's view.

The State's authority is *In re Susan Rovner, Witness*, 377 F.Supp. 954 (E.D.Pa.), aff'd w/o op. 500 F.2d 1400 (3 Cir.), cert. den. 419 U.S. 1106, 95 S.Ct. 776, 42 L.Ed.2d 802. This case is indeed close. A grand jury subpoenaed the defendant's wife to obtain a handwriting specimen. The court upheld the subpoena, stating at page 955, "The marital privilege being asserted is the privilege against one spouse becoming an

adverse witness against the other, *Hawkins v. United States,* 358 U.S. 74, 75, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), not, as Mrs. Rovner claims, against one spouse being used as the source of evidence against the other."

Defendant's authority is *Taylor v. State,* 220 Ark. 953, 251 S.W.2d 588. That case holds the opposite. There the defendant's wife was subpoenaed to appear before the sheriff and prosecutor to give a handwriting specimen.

■ The commentators do not look with favor upon the exclusion of the testimony of a spouse. VIII Wigmore, Evidence, § 2228 at 221 (McNaughten Rev.) ("This privilege has no longer adequate reason for retention."—also characterizing the rule of exclusion as "the merest anachronism in legal theory and indefensible obstruction to truth in practice"); McCormick, Evidence, § 66 at 145 (2nd Ed.). Nevertheless, the rule is statutory with us, and while we need not extend the statute by construction we must apply it in accordance with its terms.

Section 622.7 applies to grand jury proceedings. *State v. Smith,* 215 Iowa 374, 245 N.W. 309; *Molyneux v. Wilcockson,* 157 Iowa 39, 137 N.W. 1016. While § 769.19, under which this county attorney proceeded, is similar to grand jury inquisitions, the *Smith* and *Molyneux* cases are not really analogous as they relate to *testimony* by a spouse. Defendant's wife was not asked to testify here. We also note that the Fifth Amendment to the United States Constitution uses the word "witness" but does apply to real evidence as distinguished from testimonial communication. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

■ Upon consideration of the problem, including the negative view of the commentators toward this rule of exclusion, we conclude that we should not enlarge the exclusion. We thus follow the *Rovner* decision and hold that the court did not err with respect to a writing sample by Lee and a picture of her. No words proceeded from her mouth nor thoughts from her mind to convict defendant.

We do not find error in the ruling on the motion.

■ III. *Voir Dire on Capital Punishment.* Although Iowa no longer imposes the death penalty, § 690.2, Code 1975, defendant requested permission to ask the prospective jurors at the trial their opinion regarding the death penalty for first-degree murder. The trial court properly refused to allow such questions. *In re Waiver of Death Penalty,* 45 N.J. 501, 213 A.2d 20; *Donaldson v. Sack,* 265 So.2d 499 (Fla.); 47 Am.Jur.2d Jury § 203 at 793; 50 C.J.S. Juries § 275 at 1042.

No error appears at this point.

■ IV. *Admissibility of Gun.* While the State showed that Lee purchased a .32 calibre S & W long revolver and that defendant's residence contained an empty box for such a gun, searches by officers failed to turn up the homicide weapon itself.

A major portion of the defense evidence at trial involved testimony by experts that the bullet which killed decedent did not strike him directly but ricocheted off a hard surface.

On rebuttal, the State introduced extensive evidence by expert Robert Anton of experiments which contradicted defendant's evidence. Anton used a revolver of the kind which Lee bought and of the kind which fired the bullet that killed decedent. The State laid a foundation, used this gun by way of illustration during Anton's testimony, and, over defendant's objection, overruled by the court, introduced the gun into evidence. No deception was involved, as the evidence clearly showed this was the experiment gun, not the missing original weapon.

Defendant contends the court erred in overruling his objection to the experiment gun as irrelevant and prejudicial. The trial court stated:

The Court finds that there is probative value in the exhibit and that there is very little prejudice to the jury since a weapon of the same type in all respects is conceded to have been used by the Defendant in this incident and that any additional prej-

udice by having them see a similar weapon is, in my judgment, minimal. For those reasons the objections are overruled and the State may proceed with the examination of this witness with respect to the proposed exhibit.

Under the circumstances shown the trial court acted well within its discretion in admitting the experiment gun of the same kind as the homicide gun which could not be located. *Crosby v. State,* 2 Md.App. 578, 236 A.2d 33; McCormick, Evidence, § 213 at 529–530 (2nd Ed.) ("it has been suggested that it would be reversible error to exclude a duplicate testified to be identical to the object involved in the occurrence"—civil case); 22A C.J.S. Criminal Law § 708 at 945–946 ("It is proper, and indeed is common practice, in order to assist the jury in understanding the evidence, to permit the introduction in evidence of models, casts, reproductions of impressions in sand, blackboard demonstrations, or other objects, which are fairly representative of an original relevant object.") See also *State v. Shilinsky,* 248 Iowa 596, 81 N.W.2d 444; *State v. Williams,* 245 Iowa 494, 505, 62 N.W.2d 742, 748 ("The trial court has considerable discretion in determining the admissibility of demonstrative evidence but great latitude is shown in admitting it and it is usually received if it affords a basis for a reasonable inference on a point in issue.").

We find no error here.

▮ V. *Police Report.* At trial defendant moved to be allowed to see a police report by Officer Dennis R. Damon, one of the investigators, regarding an interview by Damon of Mikkelson on Sunday night, September 5, 1976. Damon testified he interviewed Mikkelson Sunday night and made a report. The trial court examined the police reports and denied the motion, and defendant asserts error.

Initially we thought the case involved a Jencks problem—permitting the defense to examine a witness' report which is germane to his direct examination. See *State v. White,* 260 Iowa 1000, 151 N.W.2d 552; *State v. Mayhew,* 170 N.W.2d 608 (Iowa), second appeal, 183 N.W.2d 723 (Iowa); *State v. Houston,* 209 N.W.2d 42 (Iowa); *State v. Deanda,* 218 N.W.2d 649 (Iowa), overruled on other grounds, *State v. Monroe,* 236 N.W.2d 24 (Iowa); *State v. Fryer,* 226 N.W.2d 36 (Iowa). Our study of the record and the reports discloses, however, that Jencks is not involved.

The homicide occurred at about 2:00 o'clock on *Sunday* morning, September 5, 1976. That morning at the scene Damon talked with Mikkelson and observed him. Damon made a report the same morning.

On *Monday* evening, September 6, 1976, Damon again interviewed Mikkelson, this time at the police station. He again made a report.

Prior to trial, the prosecutor made the reports available to defense counsel, and his position was that defense counsel had seen all the reports. The reports did not include a report of a Damon-Mikkelson interview on the evening of Sunday.

Careful study of the record and reports convinces us that when Mikkelson testified to an interview of Mikkelson on Sunday evening, he must have confused the days. Damon interviewed Mikkelson twice and the second time was on Monday evening. This misstatement by Damon precipitated the motion by defense counsel, who understandably thought a Sunday evening interview occurred.

We are satisfied that the defense saw all the Damon-Mikkelson reports which there are. The trial court thus correctly overruled the motion.

▮ VI. *Continuance.* After defendant presented extensive lay and expert evidence on his contention the bullet ricocheted and after the State introduced extensive evidence in rebuttal, defendant asked for a delay in order to present further evidence in surrebuttal, as the time was then late in the day. The trial court refused a delay but offered to let defendant proceed with his evidence. Defendant rested. Defendant now contends the trial court erred in denying a delay.

Matters of this kind are within the discretion of trial courts in the management of trials. *State v. Harris,* 222 N.W.2d 462 (Iowa). We do not find an abuse here. Moreover, defendant made no offer of proof as to what the testimony of his surrebuttal witnesses would be. We are left to speculation that he actually had additional evidence, and we will not reverse on speculation. *State v. Menke,* 227 N.W.2d 184 (Iowa).

We find no error in this connection.

VII. *Directed Verdict.* Defendant contends the trial court erred in overruling his motion for directed verdict as to first-degree murder based on want of substantial evidence of "willful, deliberate, and premeditated killing" under § 690.2 of the Code.

We stated in *State v. Overstreet,* 243 N.W.2d 880, 884 (Iowa):

It is equally well settled that on defendant's appeal from criminal conviction based on jury verdict challenging sufficiency of evidence to sustain the verdict, this court views the evidence in the light most favorable to the State and accepts as established all reasonable inferences tending to support the jury's action. It is necessary to consider only the supporting evidence whether contradicted or not.

 In addition, deliberation and premeditation "need not exist for any particular length of time." *State v. Fryer,* supra, 226 N.W.2d 36, 41 (Iowa).

 We have examined the evidence relating to the occurrence and the events immediately preceding it and hold that they warrant submission to the jury of the first-degree murder charge. *State v. Smith,* 240 N.W.2d 693 (Iowa); *State v. Fryer,* supra; *State v. Hall,* 214 N.W.2d 205 (Iowa); *State v. Gilroy,* 199 N.W.2d 63 (Iowa).

We do not find error in the court's ruling.

VIII. *Exceptions to Instructions.* The trial court overruled defendant's exceptions to jury instructions 13B, 15, and 16, and defendant contends that in this the court erred.

A. We first consider Instructions 13B and 15. Instruction 13B is the same as No. 513.7 in II Iowa Uniform Jury Instructions (Criminal), and Instruction 15 is the same as No. 513.10 in the same volume.

Instruction 13B states:

Malice aforethought is an essential element in the crime of murder. If a person makes a wrongful assault upon another with a deadly weapon and death ensues, the inference is warranted that such killing was with malice aforethought.

This inference is not conclusive, but may be considered by you with all the evidence in the case, or lack of evidence, in determining whether or not the killing charged, if done by the Defendant, was done with malice aforethought.

Instruction 15 states:

Among the essential elements of murder in the first degree are deliberation, premeditation, and a specific intent to kill.

If a person with opportunity to deliberate makes a wrongful assault upon another with a deadly weapon and death ensues, the inference is warranted that he did so with malice, deliberation, premeditation and a specific intent to kill in the absence of evidence to the contrary.

This inference is not conclusive, but may be considered by you with all of the evidence in the case, or lack of evidence, in determining whether or not the killing charged, if done by the defendant, was done with deliberation, premeditation and a specific intent to kill.

 Defendant's first objection is that the two instructions are duplicitous. We cannot agree, as one of them deals with the mental element for murder and the other with the mental element for murder in the first degree. See *Wagaman v. Ryan,* 258 Iowa 1352, 142 N.W.2d 413.

Defendant's other objection is that the two instructions shift the burden of proof to him, but we believe the instructions to be immune to this attack. *State v. Tice,* 257 Iowa 84, 130 N.W.2d 678; *State v. Fischer,* 245 Iowa 170, 60 N.W.2d 105. Defendant

recognizes that his position is at odds with *State v. Lass,* supra, 228 N.W.2d 758 (Iowa). He asks us to reconsider that holding, but we have reexamined the decision and adhere to it.

B. Instruction 16 deals with proof of intent with which an act is done. At the conclusion of the evidence the trial court gave counsel time to make objections to and requests for instructions. Defense counsel made numerous objections and requests. The court ruled and later gave counsel an opportunity to make further objections. Defense counsel did so. At no point did defense counsel object to Instruction 16. The following then occurred:

The Court: Does the defendant have any objection to any of the other instructions?

Mr. Babich (defense counsel): Just the objections heretofore asserted.

The court thereupon again ruled on the objections and then read the instructions to the jury.

After the jury found defendant guilty, defendant moved for a new trial and included an objection to Instruction 16. The court overruled the motion, and defendant now objects to Instruction 16 in this appeal.

We hold that defendant's objection to Instruction 16 in the new-trial motion came too late. *State v. Buchanan,* 207 N.W.2d 784, 787 (Iowa). With reference to an objection in a motion for a new trial, we there stated:

This ground of the motion must stand or fall on the exception taken at trial, for if a defendant undertakes to except to instructions at trial he must rest on those exceptions. He cannot in a post-verdict motion amplify them or add new ones. It avails a trial court nothing for a defendant to save part of his exceptions for a motion for a new trial, when the court can no longer change its instructions before reading them to the jury.

That is the very situation presented by this record. See also *State v. Rosewall,* 239 N.W.2d 171 (Iowa); *State v. Hillman,* 238 N.W.2d 793 (Iowa).

Defendant presents nothing for review here.

IX. *Form of Verdict.* Finally, defendant contends the trial court erred in refusing to submit a verdict of "Not guilty by reason of self defense." The court submitted the usual forms of guilty and not guilty.

Section 785.1 of the 1975 Code provides:

The jury must render a general verdict of "guilty" or "not guilty", which imports a conviction or acquittal on every material allegation in the indictment, except upon a plea of former conviction or acquittal of the same offense, in which case it shall be "for the state" or "for the defendant", and except in cases submitted to determine the grade of the offense and, when authorized, fixing the punishment therefor.

This court has held that under the cited statute verdicts of the kind this trial court submitted are proper. *State v. Fagan,* 190 N.W.2d 800 (Iowa).

But defendant contends that failure to submit the verdict of "Not guilty by reason of self defense" deprived him of a fair trial and therefore of due process of law. He cites no authority so holding. Moreover, we have examined the instructions and do not perceive how defendant was unfairly treated in this respect. The instructions enumerate the propositions the State must prove beyond a reasonable doubt in order to convict defendant. One of the propositions is to negative self defense. The trial court defined self defense and stated that if the State failed to negative self defense defendant was to be found not guilty. We do not find a deprivation of due process.

Defendant also contends that the court's failure to submit a verdict of "Not guilty by reason of self defense" deprived him of equal protection of the law for the reason that an acquittal based on insanity must so state, under § 785.19 of the Code:

If the defense is mental illness of the defendant, the jury must be instructed, if it acquits him on that ground, to state

that fact in its verdict. The court may thereupon, if the defendant is in custody, and his discharge is found to be dangerous to the public peace and safety, order him committed to one of the mental health institutes or the Iowa security medical facility, or retained in custody, until he demonstrates good mental health and is considered no longer dangerous to the public peace and safety or to himself.

Again defendant cites no authority so holding. We think the reason for the special finding in the insanity cases is apparent from § 785.19 itself—because of the necessity in some cases to commit the defendant if his discharge "is found to be dangerous to the public peace or safety . . . ." A trial court may submit other special interrogatories to a jury under certain circumstances, § 785.2, but this surely does not deprive defendants of equal protection in cases not involving interrogatories.

We do not uphold defendant's last contention.

We find no ground for reversal.

AFFIRMED.