**STATE of Iowa, Appellee,**

v.

**David James DOWELL, Appellant.**

**No. 62727.**

Supreme Court of Iowa.

Sept. 17, 1980.

Michael J. Schilling, Burlington, for appellant.

Thomas J. Miller, Atty. Gen., Shirley Steffe, Asst. Atty. Gen., and Harold R. Shortenhaus, Asst. Des Moines County Atty., for appellee.

McCORMICK, Justice.

The question here is whether a person arrested for an alleged parole violation has a right to have the proceedings against him dismissed with prejudice when the arresting officer does not take him "before a magistrate without unnecessary delay for an initial appearance" as required by § 908.2, The Code. We granted discretionary review of a magistrate's order overruling defendant David James Dowell's motion to dismiss alleging such a right. We affirm.

The relevant facts are undisputed. An information charging defendant with parole violation for changing his address without notifying his parole officer was filed June 2, 1978, and a warrant was issued. Defendant was arrested on Tuesday, October 31, 1978, and incarcerated in the Des Moines county jail at approximately 7:30 p. m. that date. On the following day, November 1, he was taken to the hospital at approximately 3:30 p. m. and was returned to jail an hour later. He was not taken before a magistrate until approximately 3:00 p. m. on November 2, 1978, almost 44 hours after his original incarceration. A magistrate had been available during the regular working hours on November 1 and 2.

Two parole officers were present at defendant's initial appearance before the magistrate on November 2. On that occasion the magistrate allowed them to amend the information to add allegations of three additional parole violations, one accusing defendant of leaving the state without permission, and the other two accusing him of committing criminal law violations. The magistrate furnished defendant with a copy of the information as amended and advised him of his rights. The public defender was appointed to represent him, and the matter was continued until 9:00 a. m. the next day. When that time came, defendant filed his motion to dismiss the information based on the alleged violation of section 908.2 in failing to bring him before the magistrate for his initial appearance without unnecessary delay. After hearing, the magistrate found the delay was unnecessary within the meaning of section 908.2 but held dismissal with prejudice was not the right remedy and therefore overruled the motion. We subsequently granted defendant's application for discretionary review.

Defendant makes the same contentions here that he did before the magistrate. In resistance, the State asserts section 908.2 was not violated but that, if it was, the magistrate was correct in refusing to dismiss the information with prejudice.

I. *Whether section 908.2 was violated.* Code chapter 908 is a legislative response to *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). It establishes procedures for parole revocation which are based on those provided in chapter 804 for the arrest and disposition of accused persons. J. Yeager and R. Carlson, 4 Iowa Practice: Criminal Law and Procedure § 1751 (1979). In *Morrissey*, the Supreme Court recognized two important stages in the typical process of parole revocation: "The first stage occurs when the parolee is arrested and detained, usually at the di-

rection of his parole officer. The second occurs when parole is formally revoked." 408 U.S. at 485, 92 S.Ct. at 2602, 33 L.Ed.2d at 496.

Section 908.2 relates to the first stage. In relevant part it provides: "An officer making an arrest of an alleged parole violator shall take the arrested person before a magistrate without unnecessary delay for an initial appearance." The Supreme Court in *Morrissey* held that a probable cause determination should be made in the first stage of the proceeding. The Court reasoned as follows:

> There is typically a substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked. Additionally, it may be that the parolee is arrested at a place distant from the state institution, to which he may be returned before the final decision is made concerning revocation. Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and *as promptly as convenient after arrest* while information is fresh and sources are available.

(emphasis supplied). 408 U.S. at 485, 92 S.Ct. at 2602, 33 L.Ed.2d at 496.

■ The requirement of section 908.2 that the initial appearance before a magistrate occur "without unnecessary delay" implements the due process requirement that the probable cause inquiry be made "as promptly as · convenient after arrest." However, nothing in chapter 908 defines "unnecessary delay."

■ The term "unnecessary delay" is defined in Iowa R.Crim.P. 1(2)(c) as "any unexcused delay longer than twenty–four hours, and consists of a shorter period whenever a magistrate is accessible and available." This definition is applicable to indictable offense procedures. Iowa R.Crim.P. 1(1). As such, it fixes the time limit for the initial appearance before a committing magistrate of a person arrested for an indictable offense. Rule 2(1) provides in part: "An officer making an arrest

. . . shall take the arrested person without unnecessary delay before a committing magistrate as provided by law."

The State argues that the definition in rule 1(2)(c) is inapplicable under section 908.2 because not expressly referred to in that section. Because the section does refer to rule 26, the State asserts the legislature would also have mentioned rule 1(2)(c) if it intended the definition to be applicable. We do not agree. Because the parole revocation procedure is modeled on the preconviction procedure, it is reasonable to believe the legislature intended the definition of "unnecessary delay" in indictable offense proceedings to apply in parole revocation proceedings. The language is strikingly similar in each situation. Use of "unnecessary delay" as a term of art implies consistency of meaning, and the purpose of the procedure in each situation is to require an early determination of probable cause for detaining the accused person on the charge.

■ Applicability of the definition is also indicated by the fact the rule and statute were adopted by the legislature at the same time. *See* 1976 Session, 66th G.A., ch. 1245(3), § 802; *id.* ch. 1245(2), § 1301, rule 1 *as amended by* 1977 Session, 67th G.A., ch. 153, § 2. The rule that statutes relating to the same subject matter are to be construed together has particular force when they were passed in the same legislative session. *State v. Schmitt*, 290 N.W.2d 24, 26 (Iowa 1980) (holding the definition of "arrest" in section 804.5 applies to the term in Iowa R.Crim.P. 27(2)(a)).

Upon this reasoning, we hold that the definition of "unnecessary delay" in rule 1(2)(c) applies to the same term in section 908.2.

■ Because the delay in the present case was 44 hours and no excuse was shown, the magistrate was correct in holding that defendant's right to be taken before a magistrate without unnecessary delay was violated.

II. *Whether the revocation proceeding should have been dismissed with prejudice.*

Defendant contends the violation of section 908.2 requires that the parole revocation proceeding be dismissed with prejudice, relying on an alleged analogy to violations of an accused's rights to a speedy trial assured under U.S.Const. amend. VI, Iowa Const. art. I, § 10, and Iowa R.Crim.P. 27(2). However the situation is not analogous.

▇▇▇ Denial of the Federal Constitutional right to speedy trial does require dismissal with prejudice under *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). However, even a denial of constitutional preliminary hearing rights does not void a subsequent conviction. *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54, 68 (1975); *State v. Henderson*, 268 N.W.2d 173, 176 (Iowa 1978). *Barker* concerned a defect in proceedings following the probable cause stage. In contrast, *Gerstein* dealt with a defect at that stage. Because the violation in the present case occurred at the probable cause stage, this case is closer to *Gerstein* than to *Barker*. We hold that dismissal with prejudice is not required by analogy to *Barker*. In so holding, we do not suggest that the violation of section 908.2 was of constitutional magnitude.

▇▇▇ Nor is the case analogous to *State v. Johnson*, 217 N.W.2d 609 (Iowa 1974), where the court held a denial of speedy trial rights under the statutory predecessor of rule 27(2) required dismissal with prejudice. Rather, because the present violation occurred in the probable cause stage of the revocation proceeding, it is analogous to a violation of statutory preliminary hearing rights. When neither statute nor rule provides a different sanction, the remedy for illegal detention based on a statutory violation in that stage of a criminal proceeding is limited to habeas corpus relief. *State v. Rouse*, 290 N.W.2d 911, 912–13 (Iowa 1980).

▇▇▇ Moreover, we have held that *Johnson* does not preclude the dismissal without prejudice of an aggravated misdemeanor or felony charge when the State obtains the dismissal after a good–faith failure to comply with its duty under Iowa R.Crim.P. 2(1)

to take the arrested person before a committing magistrate without unnecessary delay. *State v. Hill*, 286 N.W.2d 32 (Iowa 1979). We hold that dismissal with prejudice of a parole revocation proceeding is not required by analogy to a denial of speedy trial rights under rule 27(2).

▇▇▇ Different remedies apply for violations at the different stages of the proceeding. A violation in the arrest and probable cause stage affects the legality of detention of the accused to answer the charge but has no necessary effect on its merits. In contrast, a violation in the adjudicative stage ordinarily affects the merits of the charge. No necessary relationship exists between the two stages. In the preconviction situation, the first stage can be bypassed by the filing of an indictment or trial information. *Henderson*, 268 N.W.2d at 176. In the parole revocation situation, the first stage can be bypassed by securing the presence of the accused at the revocation proceeding by summons. § 908.8, The Code.

▇▇▇ The remedy in each situation is tailored to fit the wrong. As a result, in the absence of any other sanction in statute or rule, the remedy for a violation in the first stage is release from detention rather than dismissal of the charge. *Rouse*, 290 N.W.2d at 912–13; *State v. Mays*, 204 N.W.2d 862, 865–66 (Iowa 1973). In the preconviction situation, the remedy is available through habeas corpus. In the postconviction situation, it is available through a postconviction action. § 663A.2, The Code; *McElhaney v. Auger*, 238 N.W.2d 797, 798 (Iowa 1976). However, even if the accused is released, he must still answer the charge.

▇▇▇ Even when a violation of the accused's rights during the arrest and probable cause stage causes prejudice affecting the merits of a charge, such prejudice does not necessarily bar conviction. *See Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); *Smith v. United States*, 577 F.2d 1025, 1028–29 (5th Cir. 1978); *United States v. Bandy*, 421 F.2d

646, 648 (8th Cir. 1970); *State v. Archer*, 244 Iowa 1045, 58 N.W.2d 44 (1953); *In re LaCroix*, 12 Cal.3d 146, 154, 524 P.2d 816, 822, 115 Cal.Rptr. 344, 350 (1974), *cert. denied*, 420 U.S. 973, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975) ("Due process does not require that a parolee benefit from [denial of a timely prerevocation hearing], but only that no unfairness result therefrom."). *See also United States v. Blue*, 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510, 515 (1966) ("Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether."). In the present case, no prejudice affecting the merits of the parole revocation charge has been alleged or shown.

█ The habeas corpus or postconviction remedy may not be meaningful to an accused who does not have counsel. Dismissal of the charge with prejudice for a violation of initial appearance rights would be calculated to deter future violations of those rights. However, that sanction is not required by constitution nor provided for by statute or rule. Imposing it would bar a charge on a basis having no necessary relationship to its merits. Moreover, it would penalize the public by creating a risk that meritorious charges would be dismissed rather than penalize the officer responsible for the violation of rights. A more direct sanction is possible. Legislatures know how to provide for actions against officers when they wish to do so. *See, e. g.*, 42 U.S.C. § 1983. Without intimating whether we believe such an action is available in the present situation, we decline to hold that a violation of section 908.2 requires dismissal with prejudice of the revocation charge.

█ Nor, in the absence of statute or rule requiring it, do we believe dismissal of the charge without prejudice is appropriate. Such a sanction would also be misdirected. It would rest on the hope that the threat of increased procedural burdens on the officials involved would induce compliance with section 908.2. While the objective is good, the price for these burdens would be borne by the public rather than the individuals involved. In addition, serious questions exist about the effectiveness of the sanction. Dismissal without prejudice would be a hollow victory for an accused who could be detained anew on a newly filed information before he got out of the courtroom. Moreover, under *Hill*, when bad faith is not involved, the State might circumvent the sanction by obtaining a dismissal and refiling the charge before the hearing on the defendant's motion. *See* 286 N.W.2d at 33. Furthermore, in the present case, dismissal of the charge on which defendant was detained would not support dismissal of the three subsequent charges on which he could be detained.

We decline to complicate the parole revocation process by requiring that the proceeding must be dismissed for a denial of the defendant's right to an initial appearance without unnecessary delay in the arrest and probable cause stage.

AFFIRMED.

All Justices concur except REYNOLD-SON, C. J., and McGIVERIN, J., who dissent, and SCHULTZ, J., who takes no part.

REYNOLDSON, Chief Justice (dissenting).

I concur in division I of the majority's opinion, but dissent from the portion that prescribes habeas corpus as the sole remedy available to a person who is incarcerated, unadvised, and without counsel.

The majority's recommendation for a person who is being illegally held without access to counsel or a judicial officer is to be "released from detention" through the vehicle of a habeas corpus action. Of course, the first step in such an action is presenting a petition "to some court . . . authorized to allow the writ." § 663.2, The Code. In the ordinary situation, the majority's solution, from a practical standpoint, is the equivalent of advising a drowning person, going down for the third time, to take up swimming lessons.

The majority's reliance on *State v. Rouse*, 290 N.W.2d 911 (Iowa 1980), blurs the distinction between a preliminary hearing,

which was involved there, and a preliminary appearance, which concerns us here. In *Rouse* the defendant was brought before a magistrate the day after he was arrested. *Id.* at 912. There is no indication in the opinion that the judge did not then follow the mandate of Iowa R.Crim.P. 2(2):

The magistrate shall inform a defendant who appears before the magistrate after arrest, complaint, summons, or citation of the complaint against the defendant, of the defendant's right to retain counsel, of the defendant's right to request the appointment of counsel if the defendant is unable by reason of indigency to obtain counsel, of the general circumstances under which the defendant may secure pretrial release, of the defendant's right to review of any conditions imposed on the defendant's release and shall provide the defendant with a copy of the complaint. ... The magistrate shall allow the defendant reasonable time and opportunity to consult counsel.

Nor is there any indication that counsel was not provided the defendant at that time. The *Rouse* holding (that one who is promptly granted a preliminary appearance before a magistrate and is furnished counsel must thereafter rely on habeas corpus when not afforded a preliminary hearing within ten days, 290 N.W.2d at 913) furnishes no precedent in a case where one is illegally incarcerated and is neither allowed access to a magistrate nor furnished counsel.

Section 908.2, The Code, goes farther than indicated in the majority opinion. It essentially provides the same safeguards delineated by Iowa R.Crim.P. 2(2), quoted above:

*908.2 Initial appearance.* An officer making an arrest of an alleged parole violator shall take the arrested person before a magistrate without unnecessary delay for an initial appearance. At that time the alleged parole violator shall be furnished with a written notice of the claimed violation, shall be advised of his or her right to appointed counsel under rule 26 of the rules of criminal procedure, and shall be given notice that a hearing

will take place and that its purpose is to determine whether there is probable cause to believe that he or she has committed a parole violation.

The magistrate may order the alleged parole violator confined in the county jail or may order the alleged parole violator released on bail under such terms and conditions as the magistrate may require.

. . .

It is apparent that our statutory provisions and rules that require arresting officers to produce arrestees promptly in court all arise out of the same concern: that such incarceration be subjected to judicial oversight without delay. *See* § 908.2, The Code (parole); § 908.11, The Code (probation); Iowa R.Crim.P. 2 (arrest generally); *accord,* ABA Project on Standards for Criminal Justice, *Pretrial Release* § 4.1, at 43 (1968). The concept was addressed by the Supreme Court in *Mallory v. United States*:

"The purpose of this impressively pervasive requirement of criminal procedure is plain. ... The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication. Legislation such as this, requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard—not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self–confident society."

354 U.S. 449, 452, 77 S.Ct. 1356, 1358, 1 L.Ed.2d 1479, 1482 (1957), quoting *McNabb v. United States*, 318 U.S. 332, 343–44, 63 S.Ct. 608, 614, 87 L.Ed. 819, 825–26 (1943).

The question involved in this appeal is how to enforce this "requirement of criminal procedure." The court is in agreement that the answer is not dismissal with prejudice. Thus the alternatives are (1) habeas

corpus or (2) dismissal without prejudice at any stage of the criminal proceeding in which the violation is made to appear.

Habeas corpus may be "tailored to fit the wrong," as the majority suggests, but in these cases the law officers and prosecutors do not provide a fitting. Persons arrested generally, and especially persons arrested for parole and probation violations, are often without nearby friends, funds or counsel.[1] Locked up, these arrestees are without available remedy. While the majority equates the arrestee's lack of counsel with one who is without counsel after conviction, the distinction is palpable. The person concerned with postconviction remedies ordinarily has been or is represented by counsel, frequently at public expense. He or she has had the advice of counsel. The arrestee with whom we are concerned is deprived of counsel.

Even a successful habeas corpus action may result in the arrestee being remanded to custody under the same charge but pursuant to a valid commitment procedure. *See Birk v. Bennett*, 258 Iowa 1016, 1021–22, 141 N.W.2d 576, 579 (1966); 39 Am. Jur.2d *Habeas Corpus* § 156, at 288–89; § 161, at 294 (1968). This is more of a "hollow victory" than the majority ascribes to a dismissal without prejudice, which at least requires the prosecutors and law enforcement officers who have violated the law to go back to "square one." Similarly, a dismissal and arrest on refiling would render the habeas corpus action moot. *See In Interest of Meek*, 236 N.W.2d 284, 288–89 (Iowa 1975); *State v. Sefcheck*, 261 Iowa 1159, 1165, 157 N.W.2d 128, 132 (1968). Habeas corpus plainly provides no solution to a recurring problem.

Nor should we deem it controlling that the legislature has not provided for dismissal as a sanction. This may have been an oversight, similar to its failure to make the section 908.2 "unnecessary delay" subject to the Iowa R.Crim.P. 1(2)(c) definition, an omission the majority has no difficulty sup-

plying. Certainly, the law violation which confronts us here is more serious than a failure to mark the indictment "filed," or a defect in impaneling the grand jury, which, *inter alia*, provide grounds for dismissal.

In any event, *Morrissey v. Brewer*, 408 U.S. 471, 485–89, 92 S.Ct. 2593, 2602–04, 33 L.Ed.2d 484, 496–99 (1972), teaches that constitutional due process requires written notice of the claimed violations of parole, and a minimal inquiry as promptly as convenient after arrest. *See also Baldwin v. Lewis*, 300 F.Supp. 1220, 1232 (E.D.Wis. 1969), *rev'd on other grounds*, 442 F.2d 29 (7th Cir. 1971). Obviously, as indicated in division I of the majority opinion, section 908.2 was designed to implement these constitutional requirements. We may set aside an indictment on nonstatutory grounds upon a showing that constitutional rights have been violated. *State v. Hall*, 235 N.W.2d 702, 712 (Iowa 1975), *cert. denied*, 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977). We should not be deterred in these circumstances by the legislature's failure to provide a sanction.

The additional sanction of dismissal without prejudice, while no more effective than habeas corpus in the individual case of a jailed person without counsel to make the motion, eventually would cause law officers and prosecutors to produce arrestees in court as required by law. The burden of time and effort would fall on them directly, and on the public indirectly, if at all. In the longer view, the dismissal without prejudice sanction would avoid trial and appellate court time and effort spent on actions praying for writ of habeas corpus, *Sefcheck*, 261 Iowa at 1165, 1171, 157 N.W.2d at 132, 135, false imprisonment damages, *Perry v. Jones*, 506 F.2d 778, 781 (5th Cir. 1975); 5 Am.Jur.2d *Arrest* § 76, at 763 (1962), and 42 U.S.C. § 1983 damages, *Procunier v. Navarette*, 434 U.S. 555, 556, 561, 98 S.Ct. 855, 857, 859, 55 L.Ed.2d 24, 27, 30 (1978); *Wycoff v. Brewer*, 572 F.2d 1260, 1266 (8th Cir. 1978).

---

1. "[H]abeas corpus only comes into play if the incarcerated defendant, who is sometimes friendless and often indigent, himself initiates the necessary procedures." Pulaski, *Preliminary Examinations in Iowa: The Constitutional Considerations*, 60 Iowa L.Rev. 462, 489 (1975).

The dismissal without prejudice sanction ultimately would avoid the impermissibly long interrogations we deplored in *State v. Cullison*, 227 N.W.2d 121, 130 (Iowa 1975) ("[W]hen this statement was obtained from [the arrestee] he had been in custody for ten days without an opportunity to communicate with anyone but police and hospital personnel. Denial of access to the outside world continued throughout."). It would prevent reversals of convictions necessitated when the incarceration of defendants permanently deprives them of material, exculpatory evidence. *See Winston v. Commonwealth*, 188 Va. 386, 394–97, 49 S.E.2d 611, 615–16 (1948). Recognition of this sanction would logically follow our decision in *State v. Hill*, 286 N.W.2d 32, 33 (Iowa 1979), where we permitted the State to dismiss without prejudice and refile when the defendant had not been produced before a magistrate within the 24–hour period following arrest. Finally, the automatic nature of this sanction would avoid time and expense (which the county usually would bear) in the protracted habeas corpus trial and appeal to examine each arrestee's circumstances on an ad hoc basis.

I would affirm trial court's ruling that section 908.2 was violated, reverse its holding that the complaint should not be dismissed, and remand with directions to dismiss the case without prejudice. Of course, absent motives of deliberate harassment or bad–faith delay, the State would be permitted to refile the complaint based on the same alleged violation.

McGIVERIN, J., joins this dissent.